UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

BENJAMIN BUTLER, on behalf of himself and all other
persons similarly situated,

                                    *Plaintiff,*

                                                            Docket No.

                                                            CLASS ACTION
                                                            COMPLAINT AND
                                                            DEMAND FOR JURY
                                                            TRIAL

ENZO CUSTOM CLOTHIERS NEW YORK, INC.,
                                    *Defendant.*
_____


Plaintiff, BENJAMIN BUTLER, ("Plaintiff" or "Mr. Butler") on behalf of himself and all

other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned

counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their

putative class action complaint upon Defendant, ENZO CUSTOM CLOTHIERS NEW YORK,

INC. ("ENZO CUSTOM" or "Defendant"), hereby alleges as follows:


## INTRODUCTION


1.      On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding

position that websites operated by places of public accommodation must be accessible to

individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General

Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies

to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's

mandate that the goods, services, and privileges offered by such entities are equally accessible to

all, including those with disabilities **(See U.S. Dep't of Justice, Letter from Assistant Attorney**

**General Stephen E. Boyd to Rep. Ted Budd (Sept. 25, 2018),** https://www.adatitleiii.com/wp-

content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf **(adatitleiii.com in Bing) (last accessed Feb. 20, 2026)).**

2.    Plaintiff, BENJAMIN BUTLER, is a legally blind resident of New York County, residing at Selis Manor—an assisted living facility for visually impaired individuals in Manhattan. He has been diagnosed with Retinitis Pigmentosa (RP), a progressive hereditary retinal dystrophy characterized by degeneration of the photoreceptor cells, resulting in severely constricted peripheral visual fields (tunnel vision), impaired night vision, decreased contrast sensitivity, and progressive loss of functional sight. His condition and legal blindness status are documented by Dr. Eleonora Orloff, OD, of Bronx Eye Associates (See Exhibit A.)

3.    Mr. Butler is a proficient user of NonVisual Desktop Access (NVDA) screen reader software, which he relies on daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex content—including retail websites, product pages, and checkout processes—without assistance. NVDA's compatibility with properly coded websites is indispensable to his autonomy and digital accessibility.

4.    This action arises from Defendant ENZO CUSTOM CLOTHIERS NEW YORK INC.'s failure to design, maintain, and operate its commercial website, www.enzocustom.com, in a manner accessible to blind and visually impaired individuals. The Website functions as an interactive retail platform offering custom dress shirts, suits, sport coats, trousers, outerwear, accessories, and related custom tailoring services. Defendant's failure to ensure equal access to these integrated services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5.    On three separate occasions in 2025, Mr. Butler visited www.enzocustom.com

using NVDA with the intent to shop for clothing and custom garments for himself. As a legally blind consumer, he depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require him to seek assistance from strangers—an experience he finds uncomfortable, intrusive, and difficult to navigate independently. During these visits, Mr. Butler attempted to review product offerings, select garment options, and proceed through the purchasing process. Because the Website lacked proper alternative text, contained unlabeled interactive elements, and failed to provide screen-reader-compatible navigation, Mr. Butler was unable to meaningfully access product information, select available options, or complete the intended purchases.

6.    These barriers are confirmed by a SortSite accessibility audit of www.enzocustom.com, conducted on February 19, 2026, which identified WCAG 2.1 Level A, AA, and AAA violations across the Website's pages. [1] The audit revealed, among other issues:

- Missing or inadequate alternative text on images and button elements across product pages, preventing screen readers from conveying the content of visual elements to blind users.
- Empty or unlabeled interactive controls—including buttons and form elements—with no accessible name, preventing screen readers from announcing their purpose.
- Links with no accessible name, causing screen readers to announce raw URLs or file names instead of descriptive link text.
- Repeated use of vague, non-descriptive link text such as "Learn More" and similar phrases across multiple pages, violating WCAG 2.1 §2.4.4.
- Visual label mismatches where the visible text displayed on screen does not match the programmatic accessible name exposed to assistive technology.

---

[1] Plaintiff attaches as Exhibits B,C and D  the three SortSite automated accessibility audit reports for Defendant's website. SortSite is a widely used accessibility-testing tool relied upon by federal agencies, Fortune 100 companies, and independent accessibility experts to identify WCAG 2.1 Level A/AA violations. Courts regularly consider automated audit findings—including results from tools such as SortSite, WAVE, and Axe—as competent evidence of website inaccessibility (see, e.g., *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 396–97 (E.D.N.Y. 2017); *Robles v. Domino's Pizza, LLC*, 2017 WL 1330216, at *4 (C.D. Cal. Mar. 20, 2017); Gomez v. Gen. Nutrition Corp.*, 323 F. Supp. 3d 1368, 1373 (S.D. Fla. 2018)). The attached reports identify multiple WCAG violations present on Defendant's website at the time of testing.

- Improper ARIA usage, including misuse of aria-placeholder, aria-checked, and aria-hidden attributes, causing NVDA to encounter silent, non-interactive elements or receive inaccurate state information.
- Interactive elements nested within one another in a manner that violates HTML5 standards and WCAG 4.1.2, impairing keyboard navigation.
- Tables lacking proper header markup, impairing structured navigation for screen-reader users.
- Iframes and embedded content without title attributes, causing screen readers to announce meaningless file names instead of descriptive content labels.

These failures collectively render the Website difficult or impossible to use for blind consumers relying on assistive technology.

7.     A separate SortSite broken-link report identified numerous broken links throughout

www.enzocustom.com, including server error responses on key pages. These broken links disrupt

navigation, prevent access to customer-service resources, and create dead ends for screen-reader

users who cannot visually recover their place on the page.

8.     Mr. Butler specifically sought Enzo Custom Clothiers due to its reputation for fine

custom menswear, its wide selection of custom-tailored shirts, suits, and accessories, and its online

ordering platform. As a blind consumer, he depends on accessible digital interfaces to make

informed purchasing decisions. Defendant's failure to provide a WCAG-compliant website denied

him equal access to the same services offered to sighted users.

9.     Plaintiff seeks injunctive relief requiring Defendant to revise its digital policies and

practices to ensure that its Website is—and remains—fully accessible to blind and visually

impaired users. Without remediation of the barriers described herein, he will continue to be

excluded from accessing Defendant's goods and services on equal terms.

10.     Defendant's ongoing failure to provide accessible digital services constitutes a

denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this

Court issue a permanent injunction compelling Defendant to bring its Website into compliance

with federal accessibility standards.

## **JURISDICTION AND VENUE**

11.     Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq., Article 4, §§ 40-c and 40-d ("NYCRL"). All claims derive from the same nucleus of operative facts as Plaintiff's ADA claim.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant ENZO CUSTOM CLOTHIERS NEW YORK, INC. conducts substantial, continuous, and systematic business in this District through its commercial website, www.enzocustom.com,  which offers custom clothing, accessories, and tailoring services to consumers in New York. Plaintiff accessed and attempted to use the Website from his residence in New York County, and the discriminatory conduct giving rise to this action occurred within this District.

13.     Defendant ENZO CUSTOM CLOTHIERS NEW YORK, INC. is a business entity operating in New York. Defendant purposefully avails itself of the privilege of conducting business in New York by marketing, selling, and delivering its products and custom tailoring services to New York residents through its Website. Courts have repeatedly held that such purposeful, repeated online commercial activity establishes sufficient minimum contacts for personal jurisdiction. *See Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018);

*Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017).

14.    Accordingly, jurisdiction and venue are properly established in this District. Courts within this Circuit consistently hold that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over website operators whose digital platforms target or serve New York consumers.

## NATURE OF ACTION

15.    This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

16.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

17.    In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services

offered online.

18.    Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

19.    Plaintiff, BENJAMIN BUTLER, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

20.    For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. As Judge Weinstein explained in *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017): "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites . . . [T]hrough a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

21.    The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

22.    Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to: missing text equivalents for non-text

elements; unlabeled frames and navigation regions; scripts without accessible alternatives; inaccessible forms and input fields; content conveyed solely through visual presentation; inability to resize text without loss of functionality; time limits that cannot be adjusted or disabled; missing or ambiguous page titles; links lacking descriptive context; keyboard focus indicators that are not discernible; undetectable default language settings; components that trigger unexpected context changes; settings that alter context without user notice; input fields lacking labels or instructions; improperly nested markup, duplicate attributes, and non-unique IDs; inaccessible PDF files; and user interface elements whose roles and states cannot be programmatically determined.

## STATEMENT OF FACTS

23.     Plaintiff Benjamin Butler is a legally blind consumer residing in New York County, New York. He relies exclusively on NonVisual Desktop Access ("NVDA") screen-reader software to navigate digital content and complete online transactions independently. Mr. Butler receives ongoing ophthalmologic care and participates in daily instruction at VISIONS at Selis Manor, a residential facility for blind and visually impaired individuals in Manhattan, where he receives assistive-technology training, orientation and mobility instruction, and adaptive-skills support.

24.     Mr. Butler sought to purchase custom-tailored shirts, a suit, and related clothing accessories from www.enzocustom.com,  a website marketed as offering bespoke, high-quality custom clothing for men, including dress shirts, suits, sport coats, trousers, outerwear, and accessories. Enzo Custom Clothiers' reputation for fine craftsmanship and its online platform for customizing and ordering garments made it an appealing option for Mr. Butler to make considered, independent purchasing decisions from home.

25.     On three separate occasions in 2025, Mr. Butler visited www.enzocustom.com using NVDA with the intent to purchase specific clothing products for himself, including the **Loro**

**Piana Cotton Wool Silk Blue Pattern Suit**, custom dress shirts, a tailored suit, and related accessories available through the Website. These products were selected because they appeared to offer the style, fit, and quality of tailoring that Mr. Butler was seeking.

26.    Specifically, on **November 10, 2025, November 11, 2025, and on January 20th, 2026,** While attempting to navigate the product pages and ordering process, Mr. Butler encountered multiple accessibility barriers on each visit that prevented him from reviewing product specifications, selecting fabric and style options, or adding items to his cart and completing the purchase. These barriers included missing alternative text on product images, unlabeled buttons and interactive controls, inaccessible size-selection and customization menus, improper ARIA implementation, and visual label mismatches that caused NVDA to announce incomplete, inaccurate, or meaningless information.

27.    During each visit, Mr. Butler attempted to review the product page for the **Loro Piana Cotton Wool Silk Blue Pattern Suit**, which Defendant sells for **$1,895**. The page contains detailed images, descriptive text, customization menus, and pricing information that are essential for evaluating the garment. Mr. Butler also attempted to review complementary accessories— including dress shirts, ties, pocket squares, belts, and dress shoes—to assemble two complete outfits suitable for business and evening wear.

28.    Mr. Butler intended to purchase the Loro Piana suit along with accessories to create two distinct ensembles: (1) a business-professional outfit consisting of a white dress shirt, navy grenadine tie, white pocket square, and dark brown cap-toe oxfords; and (2) an evening or social outfit consisting of a cream dress shirt, burgundy silk tie, patterned pocket square, and black wholecut oxfords. These items were chosen based on Mr. Butler's personal style preferences and upcoming events requiring formal attire.

29.     While attempting to navigate the product pages and ordering process, Mr. Butler encountered multiple accessibility barriers on each visit that prevented him from reviewing product specifications, selecting fabric and style options, or adding items to his cart and completing the purchase. These barriers included missing alternative text on product images, unlabeled buttons and interactive controls, inaccessible size-selection and customization menus, improper ARIA implementation, and visual-label mismatches that caused NVDA to announce incomplete, inaccurate, or meaningless information.

30.     The SortSite Accessibility Validation Report for www.enzocustom.com confirms these issues are systemic, identifying WCAG 2.1 Level A, AA, and AAA violations throughout the Website. The audit found pages with Level A issues that are "unusable for some people," pages with Level AA issues that are "difficult to use," and Level AAA issues that provide additional barriers to accessibility. The report identifies interactive elements that contain no accessible name, including empty buttons across multiple pages, preventing screen readers from announcing their purpose to users like Mr. Butler.

31.     The SortSite report further documents widespread failures in alternative text, including button images that lack alt attributes, instances where alt text consists only of file names, and where placeholder terms are used instead of meaningful descriptions. These errors directly impacted Mr. Butler's ability to understand product images and interactive controls, as NVDA announced only file names or silence when he attempted to explore the Website's clothing and accessory pages.

32.     The audit additionally identifies improper ARIA usage, including misuse of aria-placeholder and aria-checked attributes, and reports that elements with aria-hidden="true" contained focusable content, meaning NVDA could move focus to silent, non-interactive

elements. This behavior mirrors Mr. Butler's experience when his screen reader repeatedly landed on unlabeled controls that provided no audible feedback, preventing him from navigating the page or completing a purchase.

33.     The SortSite report also identifies link-text failures, including repeated use of vague or generic link text that provides no meaningful context to screen-reader users. These failures made it impossible for Mr. Butler to determine the purpose of links associated with product features, ordering options, and customer-support resources.

34.     In an effort to obtain assistance, Mr. Butler attempted to access the Website's customer-service and informational resources. However, the SortSite Broken Link Report identifies broken links throughout the Website, including server error responses on key pages. These broken links disrupted navigation and prevented Mr. Butler from locating any functional accessibility statement, alternative formats, or a means of requesting accommodations.

35.     The SortSite Site Quality Report for www.enzocustom.com confirms the breadth of these failures, noting that a significant percentage of pages have accessibility issues, errors, and W3C standards violations. The report states that pages have broken links or other errors. These findings demonstrate that the barriers Mr. Butler encountered were not isolated or temporary but part of a pervasive, site-wide pattern of non-compliance.

36.     Mr. Butler suffered a concrete injury on each of his three visits to www.enzocustom.com when he was unable to complete his intended purchases of custom dress shirts, a tailored suit, and related accessories due to the accessibility barriers described above. These barriers prevented him from accessing product information, selecting style and customization options, reviewing specifications, or completing a purchase.

37.     Mr. Butler experienced frustration, humiliation, and a sense of exclusion when he

could not independently navigate the Website or complete his intended transactions. Courts in this Circuit recognize such dignitary harms as sufficient to establish injury-in-fact under Title III of the ADA.

38.    Mr. Butler has a genuine, credible, and ongoing desire to return to www.enzocustom.com once the Website is made accessible. He remains interested in purchasing custom dress shirts, a tailored suit, and accessories because they offer the quality, customization, and fit he seeks and which are not readily available to him through accessible alternative platforms.

39.    Mr. Butler periodically checks the Website to determine whether it has become accessible, but the barriers remain. He is currently deterred from returning because he knows from experience—and from the independent audit—that the Website is not accessible to him. Mr. Butler's intent to return is concrete and supported by: his multiple past attempts to purchase specific products; his continued interest in custom dress shirts, a tailored suit, and accessories; his periodic checks of the Website; his stated desire to complete the purchases once the barriers are removed; and his residence in New York City, where Defendant markets and sells its products.

40.    Unless this Court orders Defendant to remediate its Website, Mr. Butler will continue to be denied equal access to the goods and services offered on www.enzocustom.com.

## CLASS ACTION ALLEGATIONS

41.    Mr. Butler brings this action on behalf of himself, and all others similarly situated, pursuant to Rules 23(a) and 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure. The class consists of all legally blind and visually impaired individuals in the United States who have attempted to access www.enzocustom.com using screen-reading software and have been denied full and equal access to the Website's goods, services, and information due to the accessibility barriers described herein.

42.    The class is so numerous that joinder of all class members is impractical. There are hundreds of thousands of blind and visually impaired individuals in the United States who use screen-reading technology and regularly attempt to make online purchases. The exact number of class members is unknown to Plaintiff at this time but can readily be determined through discovery.

43.    Common questions of law and fact exist as to all members of the class that predominate over any questions solely affecting individual class members, including: (a) whether www.enzocustom.com contains access barriers that deny blind users full and equal access to the Website's goods, services, and information; (b) whether Defendant violated Title III of the ADA; (c) whether Defendant violated the NYSHRL and NYCHRL; and (d) whether Plaintiff and the class are entitled to injunctive relief.

44.    Mr. Butler's claims are typical of class members' claims. All class members are blind or visually impaired individuals who have attempted to access www.enzocustom.com using screen-reading software and encountered the same categories of accessibility barriers.

45.    Mr. Butler has suffered a past injury—his inability to complete intended purchases of specific products due to documented accessibility barriers—and faces a real and immediate threat of future harm, given his stated intent to return once the website is accessible and the continuing presence of site-wide accessibility and quality issues. His injuries are directly traceable to Defendant's failure to maintain an accessible website and are redressable through injunctive relief. Accordingly, Mr. Butler has standing to bring this action under Title III of the ADA.


**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

46.    Plaintiff, BENJAMIN BUTLER, on behalf of himself and the Class Members,

repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

47.    Defendant's Website, www.enzocustom.com, is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

48.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

49.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

50.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight

within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

51.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer for Relief below.

## SECOND CAUSE OF ACTION
### (Violation of the New York State Human Rights Law)

52.     Plaintiff BENJAMIN BUTLER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendants. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

54.     Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.enzocustom.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

55.     Plaintiff has visited the Website on three occasions and has encountered barriers to his access that exist.

56.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

57.     Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

58.     Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.

59.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date.

60.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

61.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs

and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## THIRD CAUSE OF ACTION
### (Violation of New York State Civil Rights Law) ("NYCRL")

62.     Plaintiff, BENJAMIN BUTLER, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

63.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. **(Exhibit 1) (Notice to Attorney General)**

64.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. N.Y. Civ. Rights Law § 40.

65.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by any person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

66.     § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

67.     Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against

disabled individuals who are sight impaired.

68.     Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

69.     Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside."

70.     Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

### FOURTH CAUSE OF ACTION
### (Violations of the New York City Human Rights Law) ("NYCHRL")

71.     Plaintiff, BENJAMIN BUTLER, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

73.     Defendant is subject to NYCHRL because it owns and operates the Website

www.enzocustom.com,  making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

74.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

75.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities." N.Y.C. Admin. Code § 8-107(15)(a). Defendant has failed to do so.

76.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has: (a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or (b) constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to blind class members; and/or (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

77.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

78.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful

practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

79.     Defendant's actions violated the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

80.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

81.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

82.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein; Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

83.     Plaintiff, BENJAMIN BUTLER, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

85.     A judicial declaration is necessary and appropriate at this time so that each of the

parties may know its respective rights and duties and act accordingly.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.      A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.      A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

f.      Pre-judgment and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact

the Complaint raises.

Dated: New York, New York
      February 23, 2026

 

                          Respectfully submitted,
                          **JOSEPH & NORINSBERG, LLC**

                          */s/ Robert L. Schonfeld*
                          Robert Schonfeld, Esq.
                          Attorneys for Plaintiff
                          825 Third Avenue, Suite 2100
                          New York, New York 10022
                          Tel. No.: (212) 227-5700
                          Fax No.: (212) 656-1889
                          rschonfeld@employeejustice.com